885 P.2d 376

In the Matter of the Audit of:
D & D Trucking, Inc.

D & D TRUCKING, INC., Petitioner–
Appellant on Appeal,

v.

IDAHO TRANSPORTATION DEPART-
MENT, Respondent–Respondent on
Appeal.

No. 20551.

Supreme Court of Idaho,
Boise, January 1994 Term.

June 8, 1994.

418

Eberle, Berlin, Kading, Turnbow & McKlveen, Chartered, Boise, for appellant. Stephen A. Bradbury, argued.

Larry EchoHawk, Atty. Gen., Steven M. Parry, Sp. Deputy Atty. Gen., argued, ID Transp. Dept., Boise, for respondent.

SILAK, Justice.

This is an appeal from the district court affirming a mileage use tax assessment made by the Idaho Transportation Department (the "Department") against Appellant D & D Trucking, Inc. ("D & D"), pursuant to Chapter 4, Title 49, Idaho Code, which sets forth the scheme by which the Idaho Transportation Department assesses and collects mileage use taxes from those who operate trucks on Idaho's highways. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

D & D is a small trucking company located in Blackfoot, Idaho, which hauls potatoes to Sunspiced, Inc., a potato processing company located in Blackfoot and Rexburg, Idaho. During the audit period in question (1988, 1989 and the first three quarters of 1990), D & D operated between eleven and fourteen trucks which are applicable to the issues raised in this appeal, eleven in 1988, thirteen in 1989 and fourteen in 1990. During that time period, each of the trucks was registered at multiple gross weights, some at 62,000 pounds and 82,000 pounds, and others at 62,000 and 84,000. The trucks were registered in that fashion because each truck operates in only one of two configurations. The truck is either operated without a trailer, in which case the registered gross weight of 62,000 is applicable or it is operated with a trailer in which case the 82,000 or 84,000 pound weight is applicable.

Every load of potatoes which was hauled to Sunspiced was weighed by Sunspiced and a scale ticket was created which recorded, among other information, the following: (1) the date; (2) the unit (truck) number; (3) the gross weight of the truck and its load; (4) the unladen weight of the truck alone; and (5) the net weight of the potatoes delivered. D & D's bookkeeper would enter the information from the scale tickets on a daily ledger sheet. The ledger consisted of columns into which the following information was recorded: the date, the name of the grower, the mileage between the grower's cellar or field and Sunspiced's processing plant, the number of trips made by vehicles registered at 62,000 pounds gross weight and 82,000 pounds gross weight, and the total mileage traveled in each weight category.

However, the bookkeeper did not know that D & D was operating combinations with a registered gross weight of 84,000 pounds. To all outside appearances, those combinations registered at 82,000 pounds and those registered at 84,000 pounds were identical, *i.e.*, combinations registered at those two weights were both a truck being operated in combination with a single trailer. As a result, the records kept by D & D's bookkeeper did not distinguish between miles traveled by an 82,000 pound registered combination and miles traveled by an 84,000 pound combination. All miles traveled in either registered combination were entered into the 82,000 pound column.

In January 1991, the Department conducted an audit of D & D's operation in order to determine if D & D was properly reporting the miles traveled by the trucks it owned and paying the necessary use taxes. The auditor determined that D & D's records were inadequate because D & D failed to record the

configuration of each vehicle on each trip, and therefore disallowed D & D's multiple weight reporting, and assessed all miles traveled by all vehicles, regardless of configuration, at the rate applicable to the vehicle with the highest gross weight. The Department thereafter sent D & D an assessment notice seeking the total amount of $14,984.72 in taxes. The assessment was later revised to $13,821.69, and then again to $10,599.84. D & D challenged this assessment.

After an informal conference and formal hearing were held, the hearing officer issued Findings of Fact and Conclusions of Law which accepted the position of the Department that D & D did not develop and maintain adequate record keeping systems which clearly identified and supported the miles reported at the lesser weight classifications. The hearing officer concluded that the regulations of the Department regarding multiple weight reporting were valid and not in conflict with the statutes or beyond the scope of the Department's authority. The hearing officer further concluded that the Department was permitted to reassess all miles traveled over Idaho's highways by D & D's trucks at the tax rate applicable to the vehicle with the highest registered weight. D & D filed a Petition for Judicial Review and the district court affirmed the Department's decision. D & D then appealed to this Court.

D & D raises the following issues on appeal:

1. Whether the record keeping requirements imposed upon D & D by the Department are in conflict with and beyond the scope of the statutory authority of the Department.

2. Whether the records of its operations kept by D & D, as demonstrated at the administrative hearing, are sufficient to substantiate and justify its reporting and payment of use taxes.

3. Whether the Department has the statutory authority to raise the highway use tax assessment against D & D for its failure to keep records in a form acceptable to the Department.

4. Whether D & D is entitled to attorney's fees pursuant to I.C. § 12–117.

## I. THE RECORD KEEPING REQUIREMENTS IMPOSED UPON D & D BY THE DEPARTMENT ARE NOT IN CONFLICT WITH NOR BEYOND THE SCOPE OF THE STATUTORY AUTHORITY OF THE DEPARTMENT.

██ The audit was conducted pursuant to I.C. § 49–434 which imposes use fees on all commercial vehicles having a maximum gross weight in excess of 60,000 pounds. A commercial vehicle with a maximum gross weight in excess of 60,000 pounds is subject to a registration fee and a use fee which is based on mills per mile of operation and the maximum gross weight of the vehicle. *See* I.C. § 49–434. The owner of the vehicle is required to file with the Department a statement of the gross miles each vehicle has travelled over Idaho highways, I.C. § 49–436(1), and, where the use fees are computed as specified in I.C. § 49–434, the owner is required to maintain records to substantiate and justify the use of the schedules. I.C. § 49–436(2). Where a vehicle is operated with a maximum gross weight in excess of the maximum gross weight for which the vehicle has been registered, the owner is deemed to have set a new maximum gross weight and is liable for the additional fees for the new weight and may be liable for penalties. I.C. § 49–438.

D & D contends that the multiple weight reporting record keeping requirements imposed by the Department are in conflict with the provision of the statute applicable during the audit period, and therefore, must be set aside to the extent of the conflict. D & D's argument is based upon amendments to I.C. § 49–434 and I.C. § 49–436 that were enacted in 1991, after the audit period at issue. D & D argues that based upon the language of the 1991 amendment, and the principle of statutory construction which provides that when the legislature amends a statute it is presumed to have intended that the statute have a different meaning than it had prior to the amendment, the Department was without authority to require record keeping by vehicle configuration prior to the effective date of the 1991 amendment to I.C. § 49–436(2). We disagree.

While the pre–1991 statute is not as specific in its authorization to the Department as it later was, the authorization is very broad with respect to record keeping. Significantly, the legislature did not provide any specifics as to the form or content of these records, choosing instead to make a broad statement of legislative policy that the records be sufficient to substantiate and justify the use of the schedule selected by the owner in making its report. We agree with the district court that it is plain that the legislature intended to delegate the authority to make policy choices of a legislative nature, i.e., the form and content of the records to be kept, necessary to accomplish the objectives expressed by the legislature in general terms. Thus, the legislative intent in enacting the 1991 amendment to I.C. § 49–436(2) was not to indicate that the Department's record keeping requirements were contrary to earlier legislative intent, as that message could have been delivered by a concurrent resolution, but rather to narrow the earlier delegation of authority to the agency. The mere fact of the 1991 amendment does not compel the conclusion that the Department was previously without authority to require record keeping by vehicle configuration prior to the effective date of the amendment. Because the regulations "are reasonably directed to the accomplishment of the purposes of the statutes under which they are established," they are not in conflict with the pre–1991 version of I.C. § 49–436(2) and will not be set aside on that basis. See Idaho County Nursing Home v. Department of Health & Welfare, 120 Idaho 933, 937, 821 P.2d 988, 992 (1991).

## II. THE RECORDS OF D & D'S OPERATIONS ARE NOT SUFFICIENT TO SUBSTANTIATE AND JUSTIFY ITS REPORTING AND PAYMENT OF USE TAXES.

Pursuant to I.C. § 49–436(2), every owner whose use fees are computed under § 49–434, shall maintain records to substantiate and justify use of the schedule. One of the Department's administrative rules, IDAPA 39.B.21, provides guidelines describing which records are acceptable by the Department. This rule states that a type of record which is acceptable for verification of mileage is some type of Individual Vehicle Mileage Record or IVMR. The IVMR should contain such basic information as the date of the trip; the trip origin and destination; the route of travel; the total trip miles; the mileage by state; the unit number; the vehicle fleet number, if any; the registrant's name; the trailer number; the gross weight carried; and the driver's name.

IDAPA 39.01.32.01 provides that it is the owner's responsibility to maintain an adequate reporting system which will "clearly identify and support the miles reported by individual vehicle configuration". This rule also provides that if the owner does not devise such an adequate reporting system, "all miles reported will be reassessed at the highest registered maximum gross weight". The Department auditing staff is not required to "devise extraordinary audit procedures to identify the miles operated in each weight classification". In addition, when filing its registration application with the Department each year, the owner is required to certify that it understands the above rule with regard to the record keeping requirements and the consequences if it fails to meet those requirements. IDAPA 39.01.32.03 requires that if vehicles are registered and reported at more than one combined gross weight, the IVMR's clearly show which configuration the combination of vehicles was in for each trip.

D & D admits that its bookkeeper (an employee of Sunspiced) failed to keep any daily record which distinguished an 84,000 pound load from an 82,000 pound load. Instead, all loads over 62,000 pounds were recorded as 82,000 pounds. D & D argues that although the daily ledger sheet failed to do so, the proper weight classifications distinguishing between 82,000 pounds and 84,000 pounds can be reconstructed with the use of Sunspiced's scale tickets, and that such a review of the scale tickets would demonstrate the accuracy of the ledger sheets maintained by the bookkeeper. The district court found that the record amply supported the hearing officer's finding that to go to Sunspiced and review their weight records for the three years of the audit period would require ex-

traordinary audit procedures. We agree with the district court that D & D's proposal was completely unworkable. This fact is even shown by the testimony of D & D's own accountant. When asked by the auditor at the hearing if the scale tickets were available, he stated that they were available at Sunspiced's office, but that he could not have brought that many scale tickets to the audit. He testified that "it would have taken weeks to have gone through and dug out each scale ticket for that—the period of the audit that we're talking about".

Throughout the audit period, D & D was aware of its record keeping requirements and was also aware that the Department would not devise extraordinary audit procedures in order to conduct its audits. However, D & D refused to produce the documents it claims would accurately reflect how many of its trucks weighed in at 82,000 pounds and how many weighed 84,000 pounds during the audit period. In light of D & D's refusal, its complaint that it has been denied an opportunity to demonstrate the accuracy of its record keeping system is without merit. Pursuant to IDAPA 39.01.32.03,7, D & D was required to keep source documents to support its report, and although D & D has explained how the report was prepared, it has failed to keep or provide any supporting documentation for its report. In the absence of such source documents, D & D's records fail to substantiate and justify its use of the fee schedule contained in I.C. § 49–434.

### III. THE DEPARTMENT HAS THE STATUTORY AUTHORITY TO RAISE THE HIGHWAY USE TAX ASSESSMENT AGAINST D & D FOR ITS FAILURE TO KEEP RECORDS IN A FORM ACCEPTABLE TO THE DEPARTMENT.

■ D & D next argues that the Department lacked the authority to raise all of the miles reported to the highest registered weight, or 84,000 pounds. D & D claims that I.C. § 49–436 (1988 version) is the applicable statute with respect to this issue. I.C. § 49–436(2) provides that any owner who willfully fails to maintain records to substantiate and justify the mileage reported may have the

registration of his vehicles cancelled until such time as adequate records are provided. I.C. § 49–436(3) authorizes the imposition of a penalty in the amount of 15% of the unpaid fees, plus 1% of the unpaid fees per month for the failure to file reports or pay fees. D & D argues that nowhere does this statute permit the Department to raise the vehicle owner's assessment for his failure to keep adequate records. That penalty, D & D claims, is only found in the Department's invalid regulations which must be set aside due to their conflict with I.C. § 49–436. Thus, the argument goes, because D & D's failure to maintain adequate records was not willful, the only penalty which could have been imposed by the Department was not available. We disagree.

First, we have already determined that the Department's regulations are valid and enforceable, and are not in conflict with Chapter 4, Title 49, Idaho Code. Therefore, IDAPA 39.01.32.01,6, which provides that if an adequate record keeping system is not devised, all miles reported will be reassessed at the highest registered maximum gross weight, is applicable to this case. D & D has failed to distinguish between which of its vehicles were entitled to be assessed at the lower rate and which were subject to the higher rate. Thus, all of the vehicles have been included in the higher vehicle weight category. No penalty was assessed. Because D & D has failed to justify a lower rate by keeping adequate records which would indicate the vehicles that weighed 82,000 pounds and those that weighed 84,000 pounds, the Department's actions were appropriate. Under the circumstances presented here, I.C. § 49–436(2) permits assessment of vehicles which could either be assessed at the 82,000 pound or 84,000 pound rate depending upon the configuration, at the highest registered maximum gross weight when the one seeking a lower rate has failed to support its claim.

For the reasons stated above, we affirm the district court's order affirming the findings of the audit. As we did not find in favor of D & D, it is not entitled to attorney's fees

under I.C. § 12–117. Costs to the Department.

McDEVITT, C.J., and BISTLINE, JOHNSON and TROUT, JJ., concur.